TOWN OF NORTH BONNEVILLE, a municipal corporation of the State of Washington, Plaintiff–Appellant,

v.

Howard A. CALLAWAY, Secretary of the Army; William C. Gribble, Jr., Lt. Gen., U.S.A., Chief, United States Army Corps of Engineers; Harvey P. Arnold, Col., U.S.A., District Engineer, Portland District, United States Army Corps of Engineers, and the United States of America, Defendants–Appellees.

UNITED STATES of America, Plaintiff,

v.

TOWN OF NORTH BONNEVILLE, Defendant.

UNITED STATES of America, Plaintiff–Appellee,

v.

264.29 ACRES OF LAND, MORE OR LESS, SITUATED IN SKAMANIA COUNTY, STATE OF WASHINGTON, and City of North Bonneville, a municipal corporation of the State of Washington, and other unknown owners, Defendants–Appellants.

UNITED STATES of America, Plaintiff–Appellee,

v.

1.78 ACRES OF LAND, MORE OR LESS, SITUATED IN SKAMANIA COUNTY, STATE OF WASHINGTON, and City of North Bonneville, a municipal corporation of the State of Washington, and other unknown owners, Defendants–Appellants.

No. 91–36254.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1993.

Decided Dec. 7, 1993.

James J. Mason, Preston, Thorgrimson, Shidler, Gates & Ellis, Tacoma, WA, for plaintiff-defendant-appellant.

Peter A. Appel, Dept. of Justice, Washington, DC, for defendant-plaintiff-appellee.

Before: BRUNETTI, LEAVY, and TROTT, Circuit Judges.

LEAVY, Circuit Judge:

This is an appeal from summary judgment in favor of the government in four consolidated actions arising out of the relocation of the Town of North Bonneville, Washington (Town), made necessary by the construction of a second powerhouse at Bonneville Dam. We affirm.

## BACKGROUND

After the enactment of legislation authorizing the Secretary of the Army to relocate the Town to a new townsite, *see* Pub.L. No. 93–251, § 83, 88 Stat. 35 (March 7, 1974), and as a result of the parties' negotiations, a series of written instruments were executed. One of these was a CONTRACT FOR RELOCATION REPLACEMENT, REARRANGEMENT AND/OR ALTERATION OF FACILITIES (DACW57–76–C–0039), dated August 19, 1975 (Relocation Contract). Under the agreement, the United States agreed to provide certain facilities and to sell to the Town certain identified lands as just compensation for the municipal properties taken for the powerhouse. The Relocation Contract also referred to the transfer of certain "optimum town lands"[1] and the building of a

community center if the Town's school did not relocate. The relocation contract provided that, if the United States should bring a condemnation suit to acquire municipal property, the contract itself could be filed in the action as a stipulation resolving the just compensation issue.

Numerous disputes arose between the parties over the meaning and validity of, and alleged defaults under, the relocation agreements. At one point, the Town estimated it had been required to litigate 18 lawsuits in connection with the relocation. *Town of N. Bonneville v. United States,* 5 Cl.Ct. 312, 316 (1984).

The four actions before the district court and now before us are:

(1) U.S.D.C. No. C76–204T, filed by the Town against the United States seeking a type of specific performance by the United States of the relocation contracts, injunctive relief from alleged acts and conduct not in conformity with the relocation contracts, and money damages;

(2) U.S.D.C. No. C77–56T, filed by the United States seeking a declaratory judgment that the collection of certain business occupation taxes by the Town was illegal and that various other alleged misconduct by the Town was in violation of the relocation contracts;

(3) U.S.D.C. No. C77–179T, filed by the United States seeking condemnation of lands allegedly necessary for the United States Army Corp of Engineers' (Corps') construction project; and

(4) U.S.D.C. No. C82–11T, filed by the United States seeking title to lands allegedly necessary in the Corps' construction project.

On October 20, 1980, while three of these cases were pending in the district court, the Town filed a petition in the United States Court of Claims. This suit was later transferred to the United States Claims Court (now the United States Court of Federal Claims) pursuant to section 403(d) of the Federal Courts Improvement Act of 1982. The Town's claims ultimately totaled about

---

1. "Optimum town lands," for planning purposes, were to be lands sufficient to accommodate the

existing population, and the growth of that population to 1500 persons.

$27,000,000. The United States counterclaimed for $13,400,000.

The Claims Court case was resolved on cross motions for summary judgment reported as *Town of Bonneville v. United States,* 5 Cl.Ct. 312 (1984) and at trial reported as 11 Cl.Ct. 694 (1987).

The court awarded the Town $567,093.10 [broken down as follows:] (1) the Corps' failure to deliver certain specific relocation lands ($191,100.74); (2) construction deficiencies ($335,603.94); and (3) salary expenses of the Town that the Government was obligated to reimburse ($40,388.42). The United States was awarded (a) as an offset to the Town's recovery, the sum of $1,421,966.70 for business and occupation taxes the Town had improperly collected and (b) operation and maintenance costs ($365,181.32) the Government paid that were chargeable to North Bonneville.

Supp. ER at 30.

The United States Court of Appeals for the Federal Circuit in an unpublished opinion affirmed the Claims Court except for its holding that the government was liable for failure to convey the so called optimum Town lands. Thus, $191,100.74 was deducted from the award to the Town.

## INTRODUCTION

The crux of this appeal is the Town's claim that it has not received just compensation as agreed to in the Relocation Contract. Specifically, the United States has not built a community center nor conveyed to the Town the "optimum town lands." The Town asks us to order that the United States build the community center and transfer such lands or, alternatively, that we remand for a trial to determine the monetary equivalent of such performance.

### I. *Mootness*

█ While this appeal was pending, Section 9147 of the Department of Defense Appropriations Act, 1993, Pub.L. No. 102–396, 106 Stat.1876, 1940–41 (1992) became law. That section requires that the Secretary of the Army (the Secretary) convey to the Town the "community center lot" and parcels 1 and 2 "B, C, and H" of the optimum town lands. Pub.L. No. 102–396, § 9147(a)(2) and (3). It further provides that completion of, among other things, the conveyance of the community center lot and the specified optimum town lands shall constitute completion of the relocation of the Town of North Bonneville and shall fully satisfy any claim of the Town for just compensation relating to the taking by the United States of the municipal facilities and utilities of the city.

Both the Town and the United States contend this appeal is not moot because section 9147 does not resolve all the issues in these actions. We agree. As the United States points out, section 9147 does not require that the United States build the Town a community center. In addition, section 9147 does not require the *immediate* conveyance of the optimum town lands. Finally, section 9147 does not settle two of the United States' cases against the Town; specifically the claims for lands necessary for Army Corp of Engineers' construction (C77–179T and C82–11T).

### II. *Collateral Estoppel*

The United States contends that the Claims Court's judgment, as modified by the Federal Circuit, binds the Town on the interpretation of the Relocation Contract and, thus, the Town is precluded from relitigating that issue. In response, the Town contends that under 28 U.S.C. § 1500 the Claims Court lacked jurisdiction over the action before it and, thus, its rulings are a nullity. *Keene Corp. v. United States,* —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), held that the Claims Court lacked jurisdiction when, as here, the same claim is pending in another court at the time the complaint is filed in the Claims Court. Section 1500 provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States.

The United States asserts that, even if the Claims Court lacked subject matter jurisdiction, its decision still forms a bar to this

litigation. According to the United States, this is because it is well-established that courts will protect a final judgment from collateral attack and accord such judgment preclusive effect even if the original court lacked subject matter jurisdiction.

In the Claims Court litigation, the only challenge made to the court's subject matter jurisdiction was that by the United States. It argued that the Relocation Contract was not within the class of contracts covered by the Tucker Act. Neither party contended that the Claims Court lacked subject matter jurisdiction because of 28 U.S.C. § 1500. Even assuming *Keene Corp.* requires a finding that the Claims Court lacked subject matter jurisdiction, its judgment may still form a bar to this litigation. The Town does not argue that the Claims Court failed to apply correct substantive rules, or that the proceedings were somehow unfair. Rather, the Town portrays itself as a "tardy champion of the abstract public interest in proper allocations of judicial power." Wright, Miller & Cooper, *Federal Practice and Procedure,* § 4428 at 277 (1981).

The Town contends the Claims Court litigation is not *res judicata* because there is a basic difference between damages for breach of an executory promise and payment of just compensation for property taken. Because the Claims Court lacks jurisdiction over the latter issue, the Town argues, that issue was not adjudicated. In response, the United States argues that the Town's position is based on a "fundamental error" in confusing claim preclusion—*res judicata*—with issue preclusion—collateral estoppel. The United States concedes that *res judicata* is inapplicable, as the claims court could not have adjudicated the specific claims before the district court. This is irrelevant, the Government contends, because it relies exclusively on *issue* preclusion.

■ Whether collateral estoppel is available is a mixed question of law and fact subject to *de novo* review. *Plaine v. McCabe,* 797 F.2d 713, 718 (9th Cir.1986). Once the availability of collateral estoppel is determined, a district court's decision to apply collateral estoppel is reviewed for abuse of discretion. *Id.* Under the federal standard, to foreclose relitigation of an issue under collateral estoppel, three elements must be met:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir.1992).

The Town argues that the issue of its claims to just compensation under Article 10 of the Relocation Contract, or its cash equivalent, were not decided by the Claims Court. That Article provides:

> Should it be determined for any reason that the right, title, and interest of the City in and to the lands referred to in Article 2, Section 1, shall be acquired by condemnation, or other judicial proceedings, the City shall cooperate in the prosecution of the proceedings and *this agreement shall, without more, constitute a stipulation which may be filed in the proceedings and be final and conclusive evidence of the adjustments to be made to the facilities herein mentioned.*

(Emphasis added.) The Town concedes that Article 10 defines just compensation as the Government's commitments to provide substitute facilities under the relocation contract, and that the Claims Court ruled that some of those commitments would not support a damages claim. It argues, however, that that ruling did not determine the quantum of just compensation. Rather, it dealt with the quantum of consequential damages for breach of contract.

■ We disagree with the Town's analysis and hold that the Claims Court's decision bars relitigation of the issues presented here. It is conceded that the Relocation Contract sets forth the measure of just compensation for the taking of the Town. The Claims Court considered the Town's claims that, under the Relocation Contract, the United States was obligated to convey to it the opti-

mum town lands and build it a community center. The Claims Court rejected these claims. While it did so in the context of a *claim* for breach of contract, the identical *issue* of the parties' obligations under the Relocation Contract was decided. Article 10 sets the measure of just compensation as the parties' obligations under the Contract. The parties' obligations with regard to the building of a community center and the conveyance of the optimum town lands were determined in the Claims Court. The Town is therefore precluded from relitigating that issue.

### III. *Judicial Admissions by Government Counsel*

■ The Town also argues that the government should be required to convey the optimum town land because it is bound by the comments of Assistant United States Attorney Charles Pinnell and by Paul H. Schroy, District Counsel, Corps of Engineers, Portland District, made on July 17, 1979, before United States Magistrate Judge Robert E. Cooper. In the absence of egregious circumstances, parties are generally bound by the admissions of their attorney, including oral admissions. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir.1991) *cert. denied,* — U.S. ——, 112 S.Ct. 2310, 119 L.Ed.2d 230 (1992) (citing *United States v. Wilmer,* 799 F.2d 495, 502 (9th Cir.1986) *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987)) and *Magallanes–Damian v. INS,* 783 F.2d 931, 934 (9th Cir.1986). The Town contends that this rule should also apply to promises made by government counsel in open court.

When asked about what remedies the Town would have if the United States were backing down from participating in the idea of an optimum town, Pinnell said: "I am not sure that we're really backing down."

Schroy said:
> But I'd like to clarify the Government's position, if I may. That is, if the town is determined to have the legal authority—to have the legal authority to reimburse us for this land, and that they have a public, constitutional right to take fee title to this land, we'll carry out our contract.

. . . .

> They don't pay us anything for the initial town; that was an exchange. Unless they want something beyond capacity or better—but in the optimum town or growth town, potential growth town, they were to reimburse us in full for that, as I said.

> Our position is that they cannot do that, because the attorney General's opinion, and reading the Constitution, that after we spent the money, acquired the land, they we would not be able to reimburse. And, if that issue is tried, and it comes out that they do have the authority, the Corps will fulfill gladly their portion of the Contract 39.

ER Item D, at 7–8.

The issue of the Town's authority to pay for the land was certified to the Supreme Court of Washington, which in *United States v. North Bonneville,* 94 Wash.2d 827, 621 P.2d 127 (1980), sustained the Town's authority.

We need not resolve the questions of whether the United States was bound by statements of counsel as may be the case with some other litigant. We read the record as containing no more than a representation that the United States would abide by its contracts. Any obligation arising from the statements of counsel was equal to the government's obligations under the contracts which have been resolved by the Claims Court and the Federal Circuit.

AFFIRMED.