**SPOKANE ARCADE, INC.; and World Wide Video of Washington, Inc., Plaintiffs–Appellants,**

v.

**CITY OF SPOKANE, Defendant–Appellee.**

No. 94–35931.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1995.

Decided Jan. 24, 1996.

**664**

Gilbert H. Levy, Seattle, Washington, for plaintiffs-appellants Spokane Arcade and World Wide Video.

Patricia Connolly Walker, Assistant City Attorney, Spokane, Washington, for defendant-appellee City of Spokane.

Before: D.W. NELSON and JOHN T. NOONAN, Jr., Circuit Judges, and TANNER, District Judge*.

* The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation.

**D.W. NELSON, Circuit Judge:**

Appellants Spokane Arcade and World–Wide Video ("World Video") brought this action against Appellee City of Spokane, alleging that ordinances promulgated by the city which regulated adult arcades were invalid restrictions on the manner in which protected speech may be expressed. World Video maintains that in order to comply with the ordinances it will have to hire more employees, thus increasing its payroll expenses and decreasing its profits; it contends that because of this alleged inability to make an adequate profit, it will in effect be denied access to the adult entertainment market. The district court, however, rejected its claim, and held that in determining whether the First Amendment had been violated, the relevant inquiry turned on whether the plaintiffs were free to engage in their protected speech and not on whether the regulation at issue resulted in decreased profits. We affirm.

## BACKGROUND

Appellants Spokane Arcades and World Wide Video ("World Video") operate adult arcades in the City of Spokane. In the arcades, patrons enter booths and insert tokens or coins to watch sexually explicit videos. World Video also sells sexually explicit books, videotapes, magazines and novelties; these materials are located in a retail room off the entrance of the stores, while the viewing booths are in a video viewing room in the back. There is only one clerk on duty at a time, and s/he is stationed in the retail room.

In the spring of 1993, the Mayor of Spokane appointed a task force to study the problems associated with adult arcades, some of which included drug usage and sexual conduct between patrons in the video booths. These problems were compounded by the fact that police officers were unable to conduct walk-through inspections due to safety concerns. The Task Force presented evidence to the City Council that the configuration of the arcades and the lack of adequate

staffing "creat[ed] the risk of officers encountering in progress criminal activity." Moreover, the Task Force maintained that "due to the maze-type design currently in place, it would be difficult for officers to tactically retreat should the need arise."

The Task Force suggested that a clear view into the arcades and doorways that opened into an adjacent public room would reduce the potential for crime. Accordingly, the city promulgated ordinances which provided, *inter alia*, that all arcade booths be "open to an adjacent public room so that the area inside is visible by direct line of sight to persons in the adjacent public room," and that "[t]here must be at least one employee on .duty and situated in the public room adjacent to the adult arcade stations or booths at all times that any patron ... is present inside the premises." S.M.C. §§ 10.08.100(D), 10.08.110(A).

World Video challenged the ordinances in the district court, alleging that under the test enunciated by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), *reh'g denied,* 475 U.S. 1132, 106 S.Ct. 1663, 90 L.Ed.2d 205 (1986), they were invalid restrictions on the manner in which speech may be expressed. The challenge relevant to this appeal centered on those sections of the ordinances which required that the interior of the booths be visible to employees in an adjacent public room and that at least one employee be situated in that room whenever a customer was present. World Video maintained that it would have to hire additional employees in order to ensure that the booths were visible to employees in the adjacent room, and argued that because of the revenue that would be lost as a result of the open booth requirement, the additional payroll expense would severely decrease the arcades' profitability and would unduly restrict World Video's ability to engage in protected expression. The district court disagreed, effectively dismissing World Video's economic impact arguments as it held that the ordinances did not deny World Video reasonable alternative avenues of communication.

## STANDARD OF REVIEW

Following a bench trial, the judge's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses. Fed.R.Civ.P. 52(a). *See Price v. United States Navy,* 39 F.3d 1011, 1021 (9th Cir.1994); *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 384 (9th Cir. 1994). The district court's conclusions of law are reviewed de novo. *Price,* 39 F.3d at 1021.

## DISCUSSION

As an initial matter, we take note of the fact that World Video's contention that additional employees would have to be hired in order to comply with the ordinances is not well-supported by the record. Except for the requirement that "[t]here must be at least one employee on duty and situated in the public room adjacent to the adult arcade stations or booths at all times that any patron ... is present," S.M.C. § 10.08.110(A), the ordinances do not regulate the number of employees that must be present in an establishment. In addition, the city presented evidence that there were design options available to World Video which would permit it to conduct retail sales and arcade viewing in the same room.

Even if World Video demonstrated that the hiring of additional employees was unavoidable, the adverse economic impact it posits is irrelevant to First Amendment analysis. Addressing the constitutionality of a municipal zoning ordinance which strictly regulated the establishment of adult businesses, this court in *Topanga Press Inc. v. City of Los Angeles,* 989 F.2d 1524 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994), discussed the extent to which economic considerations could inform the analysis of time, place and manner restrictions. The appellants in *Topanga,* a group of adult businesses, argued that the city provided an insufficient number of sites for the businesses and that enforcement of the ordinance would thus cause ir-

reparable injury. We held that the relevant inquiry was whether the government denied the businesses the opportunity to open and operate their establishments, and suggested that in order to so determine, it was appropriate "to consider economics when evaluating whether a particular relocation site is in fact part of the real estate market." *Id.* at 1530. However, we emphasized that a "question of purely economic injury is not relevant to the issue of whether a moving party faces hardship if a restrictive zoning ordinance is enforced." *Id.* at 1528. We thus made the important distinction between "consideration of economic impact *within* an actual business real estate market and consideration of cost to determine whether a specific relocation site *is part* of the relevant market," *id.,* noting that only the latter was permissible in the examination of alleged First Amendment violations.

■ Accordingly, the *Topanga* test requires an examination of whether a challenged provision prohibits entry into a market where the aggrieved party might exercise her rights, and distinguishes this inquiry from any examination of success within the market at issue. A review of the restrictions in this matter demonstrates that they do not serve as such an absolute bar to market entry. The ordinances do not prohibit World Video from engaging in that protected speech which will allow it to compete in the adult entertainment market, but merely provide that the costs of doing so may increase. This type of "injury," however, should not inform First Amendment analysis: in *Topanga*, we cautioned against inquiring into the costs of continued market participation, and limited the scope of permissible economic analysis to an examination of whether one is permitted to enter or participate in the market in the first instance.

World Video attempts to distinguish the instant matter from this court's holding in *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1061 (9th Cir.1985), where we held that an ordinance which required that exotic dancers perform at least 10 feet away from patrons, and on a stage raised at least 2 feet from the floor, did not deny the dancers "reasonable

access to their market." *Id.* at 1061. Unlike the ordinance there at issue, World Video contends that the contested provisions in this case will deny it access to the adult entertainment market "by making it totally unprofitable for them to operate their businesses."

Not only does this argument erroneously assume that the only determinant of profitability is payroll costs, an assumption we will not indulge, but it also reflects a deep misunderstanding of the market access/market success distinction articulated in *Topanga*. In *Topanga*, we maintained that in the absence of any absolute bar to the market (in that case, relocation to a site that would deny a business the opportunity to open and operate), it is irrelevant whether "[a regulation] will result in lost profits, higher overhead costs, or even prove to be commercially unfeasible for an adult business." 989 F.2d at 1531. *See also Walnut Properties v. City of Whittier,* 861 F.2d 1102, 1109 (9th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989), (distinguishing between intrinsic limitations and limitations resulting from the imposition of market forces). Thus, an absolute bar in this matter would be a regulation that prohibited arcade owners from engaging in their protected speech, and not one that merely prohibited them from realizing the profits to which they were accustomed.

Furthermore, World Video attempts to rely upon the Supreme Court's recent opinion in *United States v. National Treasury Employees Union,* — U.S. —, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) in support of its economic impact argument. In *Treasury Employees,* the Court held that § 501(b) of the Ethics in Government Act of 1978, which prohibited the receipt of honoraria by government employees, violated the First Amendment. The court held that the prohibition on compensation unduly burdened "expressive activity": "Publishers compensate authors because compensation provides a significant incentive toward more expression. By denying respondents that incentive, the honoraria ban induces them to curtail their expression if they wish to continue working

for the government." *Id.* at ——, 115 S.Ct. at 1014.

*Treasury Employees,* however, is entirely consistent with the test articulated by this court in *Topanga* and can be distinguished easily from the instant matter. The prohibition at issue in *Treasury Employees* had the effect of not merely reducing the value of the employees' speech, but rather of barring them from the market in which that speech might be expressed. That they could have engaged in such acts of expression without compensation was irrelevant; *Treasury Employees* suggests that they must not be denied *the opportunity* to enter into a market where they might be compensated for such expression. *See also Topanga,* 989 F.2d at 1529 ("The test for determining whether the Adult Businesses' First Amendment rights are threatened is whether a local government has 'effectively den[ied] [them] a reasonable opportunity to open and operate.'")

The ordinances promulgated by the city in this case do not deny World Video the opportunity to operate its establishments, but merely (or rather, allegedly) increase the costs of its doing so. Even if the costs of compliance were so great that World Video would be forced out of business, the ordinances do not pose any intrinsic limitation on the operation of the arcades, but merely increase World Video's vulnerability to such market forces as the increased costs of labor and the decreased or stagnant demand for pornography. Accordingly, we hold that the ordinances constitute valid manner restrictions.

The judgement of the district court is AFFIRMED.