KEV, INC., Plaintiff-Appellant,

v.

KITSAP COUNTY and the Honorable Ray Aardal and John Horsley, County Commissioners of Kitsap, etc., et al., Defendants-Appellees.

No. 84–4088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1985.

Decided July 7, 1986.

1054

Jack R. Burns, Burns & Meyer, Bellevue, Wash., for plaintiff-appellant.

Ronald A. Franz, Deputy Pros. Atty., Port Orchard, Wash., for defendants-appellees.

Before PREGERSON and WIGGINS, Circuit Judges, and SCHNACKE, District Judge.*

PREGERSON, Circuit Judge.

Kev, Inc. challenges the constitutionality of a Kitsap County ordinance regulating non-alcoholic topless dancing establishments and appeals from the district court's order denying its motion for injunctive and declaratory relief. We affirm in part and reverse in part.

## BACKGROUND

Appellant, Kev, Inc., ("Kev"), a Washington corporation, leased premises in Kitsap County ("the County") to operate a live entertainment facility called "Fantasies," which was to feature topless dancing and sell non-alcoholic beverages to adults for consumption on the premises. In early 1983, Kev secured the appropriate business licenses and began remodeling the premises to commence business operations.

On January 24, 1983, the Kitsap County Board of Commissioners proposed Ordinance No. 92, entitled "An Ordinance Regarding Erotic Dance Studios," to regulate adult entertainment facilities. The stated purpose of the proposed ordinance was to regulate topless dancing to minimize per-

---

* The Honorable Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation.

ceived side effects, such as illegal drug dealing, fights, and prostitution, which would purportedly threaten the community's well-being. On February 7, 1983, the County held a public hearing on the proposed ordinance. Law enforcement officials from Kitsap and surrounding counties testified that "soft drink, topless dancing" establishments in adjacent counties were the sites of crime problems such as prostitution and drug dealing. The County Board of Commissioners passed the proposed ordinance that same day.

On February 14, 1983, Kev filed suit, pursuant to 42 U.S.C. § 1983, in the United States District Court for the Western District of Washington, seeking a preliminary and permanent injunction and a declaratory judgment finding Ordinance No. 92 unconstitutional. Three weeks later, the County Board of Commissioners passed Ordinance No. 92–A as an amendment to Ordinance No. 92. Kev then filed an amended complaint challenging, on constitutional grounds, the provisions of Ordinance No. 92 as amended by Ordinance No. 92–A ("the ordinance"). Primarily, Kev alleges that topless dancing is entitled to first amendment protection and that the ordinance unduly restricts the exercise of that protected right.

The ordinance defines an "erotic dance studio" as "a fixed place of business which emphasizes and seeks, through one or more dancers, to arouse or excite the patrons' sexual desires." Sections 2c and 3a. The ordinance regulates erotic dance studios in various ways. It requires licensing of erotic dance studios and their dancers. Sections 3–6. It also requires that dancers and patrons be at least eighteen years of age; that dancing occur on a raised platform at least ten feet from patrons; and that all books and records of erotic dance studios be open to official inspection. Sections 9d, e, i, j, and Section 10. The ordinance also proscribes the sale or possession of intoxicating liquor and controlled sub-

stances, Section 9g; fondling or caressing between dancers and patrons, Section 9k; and the payment or receipt of gratuities, Sections 9l and m.

On June 9, 1983, Kev opened the business to the public. On January 14, 1984, Kev was administratively dissolved for failure to comply with state corporate licensing regulations. But, after curing the deficiencies, Kev was reinstated as a corporation on April 24, 1984. The certificate of reinstatement was back-dated to and took effect as of the January 14, 1984 dissolution date.

After a hearing on Kev's motion for a preliminary injunction, the district court held the closing hour provision of the ordinance unconstitutional, but refused to enjoin enforcement of other provisions of the ordinance pending a hearing on the merits. On July 19, 1984, following a hearing on the merits, the district court found the ordinance constitutional in its entirety.[1] Kev timely appealed.

## DISCUSSION

### I. *Jurisdiction*

■ The County contends that the district court did not have jurisdiction when it entered judgment on July 19, 1984. The County argues that because Kev was dissolved on January 14, 1984, there were no adverse parties and, therefore, no case or controversy when the district court entered judgment on July 19, 1984. For the same reasons, the County argues that this court does not have jurisdiction in the present appeal. We disagree.

Although Kev was "administratively dissolved" on January 14, 1984 for failure to comply with state corporate licensing regulations, it was reinstated as a corporation on April 24, 1984 after curing its problems with the state authorities. The certificate of reinstatement provided that Kev's reinstatement dated back to and took effect as of the January 14, 1984 dissolution. For

---

1. On March 21, 1985, however, the district court ordered that its judgment be corrected to include its earlier holding that the closing hour provision of the ordinance, section 9f, was unconstitutional. The County does not challenge this holding on appeal.

this reason, we find the County's motion to dismiss for mootness itself to be moot. We, therefore, have jurisdiction to hear the present appeal.

## II. *Standard of Review*

This case presents questions of law, which we review *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III. *Merits*

### A. *Due Process*

Kev contends that ordinance section 2e (defining erotic dance studios) and section 9k (prohibiting dancers from "fondling" or "caressing" any patron) are unconstitutionally vague and thus violate due process requirements. We disagree.

 A fundamental requirement of due process is that a statute must clearly delineate the conduct it proscribes. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Vague laws are offensive because they may entrap the innocent by not giving fair warning of what conduct is prohibited. *Id.; Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Further, to avoid discriminatory or arbitrary enforcement, due process requires that laws set forth reasonably precise standards for law enforcement officials and triers of fact to follow. *Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974); *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99. Moreover, where first amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required. *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99; *see also Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217–18, 95 S.Ct. 2268, 2276–77, 45 L.Ed.2d 125 (1975); *Goguen*, 415 U.S. at 573, 94 S.Ct. at 1247; *Ashton v. Kentucky*, 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966).

 Section 2e defines an erotic dance studio as as "a fixed place of business which emphasizes and seeks, through one or more dancers, to arouse or excite the patron's sexual desires." The ordinance classifies erotic dance studios according to the manifest intent of the operator of the studio. Thus, one who exhibits erotic dancing with an intent to arouse the sexual desires of his patrons would know that his business falls within the purview of the ordinance. The fact that the prosecutor must prove the intent of the operator of the business does not by itself render the statute void for vagueness. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952) (statute requiring drivers transporting explosives to avoid crowded thoroughfares, "so far as practicable," not void for vagueness since statute requires a knowing violation); *United States v. Doyle*, 786 F.2d 1440, 1443 (9th Cir.1986) (presence of scienter requirement in statute prohibiting sale, transportation, or receiving of wildlife without a permit issued by the state enables law to withstand vagueness challenge). Thus, section 2e provides an adequate standard for enforcement and gives fair warning to the business it targets.

 Section 9k provides that: "No dancer shall fondle or caress any patron and no patron shall fondle or caress any dancer." "Caressing" and "fondling" are ordinary, commonly used terms. Both words describe forms of affectionate touching and are not limited in meaning to affectionate touching that is sexual. *See Webster's Third New International Dictionary* 339, 883 (1971). However, in the context of the other definitions provided in the ordinance, *e.g.*, § 2c ("[d]ancer—a person who dances or otherwise performs for an erotic dance studio *and who seeks to arouse or excite the patrons' sexual desires*" (emphasis added)), section 9k is easily understood to prohibit sexual conduct between dancers and patrons whom the dancers intend to arouse sexually while the dancers are acting in the scope of their employment at the erotic dance studio.

Further, to find a violation of the prohibition against "caressing" and "fondling," prosecutors must prove that a dancer or

patron engaged in a specified act, i.e., fondling or caressing with the intention to sexually arouse or excite. Section 9k thus provides an adequate standard for law enforcement officers. *Cf. Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (ordinance requiring persons who loiter or wander the streets to provide "credible and reliable" identification and account for their presence held unconstitutional for failing to provide adequate law enforcement standards and to give fair warning of proscribed conduct). Since sections 2e and 9k provide adequate law enforcement standards and give fair warning of the proscribed conduct, the appellant's vagueness argument fails.

### B. *First Amendment Violations*

Courts have considered topless dancing to be expression, subject to constitutional protection within the free speech and press guarantees of the first [2] and fourteenth amendments. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648 (1975); *Chase v. Davelaar,* 645 F.2d 735, 737 (9th Cir.1981).

■ The County erroneously asserts that even if topless dancing were protected by the first amendment, it is not entitled to the same degree of protection afforded speech clearly at the core of first amendment values. In support of its assertion, the County relies on Justice Stevens's statement in the plurality opinion in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), that "society's interest in protecting [erotic expression] is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate...." 427 U.S. at 70, 96 S.Ct. at 2452. However, only three other justices (Chief Justice Burger, Justices White and Rehnquist) concurred in

that statement. The County fails to recognize that five other justices in *Young* concluded that the degree of protection the first amendment affords speech does not vary with the social value ascribed to that speech by the courts. *Id.* at 73 n. 1 (Powell, J., concurring), 84–85, 96 S.Ct. at 2453 n. 1, 2459–60 (Stewart, J., dissenting, joined by Brennan, J., Marshall, J., and Blackmun J.). This view continues to govern. Several circuits that have considered this question have adopted the position ascribed to the five justices in *Young. See United States v. Guarino,* 729 F.2d 864, 868 n. 6 (1st Cir.1984) (en banc); *Avalon Cinema Corporation v. Thompson,* 667 F.2d 659, 663 n. 10 (8th Cir.1981) (en banc); *Hart Bookstores, Inc. v. Edmisten,* 612 F.2d 821, 826–28 (4th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980).

■ However, determining that topless dancing is protected expression does not end our inquiry. Although first amendment coverage extends to topless dancing, it "does not guarantee the right to [engage in the protected expression] at all times and places or in any manner that may be desired." *See Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). A governmental entity, when acting to further legitimate ends of the community, may impose incidental burdens on free speech. *City of Renton v. Playtime Theatres, Inc.,* — U.S. ——, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986). While regulations that restrain speech on the basis of content presumptively violate the first amendment, " 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* 106 S.Ct. at 928. A regulation is "content-neutral" if it is *"justified* without reference to the content of the regulated

---

**2.** The first amendment to the United States Constitution provides in relevant part: "Congress shall make no law ... abridging the freedom of speech, or of the press...." This Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963).

speech." *Id.* at 929 (emphasis in original) (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976)).[3]

 The stated purpose of the County's ordinance is to alleviate undesirable social problems that accompany erotic dance studios, not to curtail the protected expression —namely, the dancing.[4] At a hearing on the proposed ordinance, the County presented evidence that drug dealing, prostitution, and other social ills accompany topless dancing establishments. *See California v. LaRue,* 409 U.S. 109, 111, 93 S.Ct. 390, 393, 34 L.Ed.2d 342 (1972). Law enforcement officials from Kitsap and neighboring counties testified that these problems had been associated with erotic dance studios in other counties. The Supervisor of the Vice Control Department of Kings County testified that close contact between dancers and patrons facilitates prostitution. The County has a legitimate and substantial interest in preventing social problems that accompany erotic dance studios and threaten the well-being of the community. *See Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243, 1246 (9th Cir.1982) (upholding regulation requiring "open booths" in adult film arcades). Thus, we conclude that the ordinance is content-neutral because it is justified without "reference to the content of the regulated speech." *See Renton,* 106 S.Ct. at 929; *Virginia Pharmacy,* 425 U.S. at 771, 96 S.Ct. at 1830.

Kev contends that the ordinance violates the first amendment because: (a) it limits the location where dancers may perform; (b) it burdens a dancer's performance by requiring a license, prohibiting the acceptance of gratuities, restraining erotic dancers from exercising their first amendment rights until they are licensed, and prohibiting erotic dancers, in exercising their first amendment rights, from mingling with patrons; and (c) it places a reporting and inspection burden upon a business based solely on its first amendment activities.

#### a. *License Requirements*

The ordinance requires that all operators of erotic dance studios and all erotic dancers obtain licenses from the County. To obtain a license, a prospective operator must supply the County with various data including:. his or her name, address, phone number, and principal occupation; similar information for all partners in the venture; and descriptions of the proposed establishment, the nature of the proposed business, and the magnitude thereof. A dancer applying for a license must provide the County: his or her name, address, phone number, birth date, "aliases (past and present)," and the business name and address where the dancer intends to dance.

 It is well established that the government may, under its police power, require licensing of various activities involving conduct protected by the first amendment. *See, e.g., American Mini Theatres,* 427 U.S. at 62, 96 S.Ct. at 2448;

**3.** *See also United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) (holding that a content neutral regulation that imposes an incidental burden on speech is sufficiently justified if: [1] it is within the constitutional power of the government; [2] it furthers an important or substantial governmental interest; [3] the governmental interest is unrelated to the suppression of free expression; and [4] the incidental restriction on first amendment freedoms is no greater than is essential to the furtherance of that interest). In *United States v. Albertini,* —— U.S. ——, 105 S.Ct. 2897, 2907, 86 L.Ed.2d 536 (1985), the Supreme Court clarified the fourth *O'Brien* factor, noting that "an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien,* so long as the neutral regulation pro-

motes a substantial government interest that would be achieved less effectively absent the regulation."

**4.** Section 1 of the ordinance states:

*Purpose.* The purpose of this ordinance is to regulate erotic dance studios to the end that the many types of criminal activities frequently engendered by such studios will be curtailed. However it is recognized that such regulation cannot de facto approach prohibition. Otherwise a protected form of expression would vanish. This ordinance represents a balancing of competing interests: reduced criminal activity through the regulation of erotic dance studios versus the protected rights of erotic dancers and their patrons.

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969); *Tyson & Brother— United Theatre Ticket Offices, Inc. v. Banton*, 273 U.S. 418, 430, 47 S.Ct. 426, 428, 71 L.Ed. 718 (1927) ("The authority to regulate the conduct of a business or to require a license, comes from a branch of the police power...."); *see also Genusa v. City of Peoria*, 619 F.2d 1203, 1212–13 (7th Cir. 1980) (court relied on *American Mini Theatres* in upholding simple license requirement for operators of adult bookstores). A licensing requirement raises first amendment concerns when it inhibits the ability or the inclination to engage in the protected expression. *See Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945) (requirement that union organizers register with state unconstitutionally inhibits free expression). Further, a licensing requirement must provide "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth*, 394 U.S. at 150–51, 89 S.Ct. at 938–39.

Here, there is no suggestion that the licenses required either to operate, or to perform in, a topless facility would be difficult to obtain or would for some other reason discourage either a prospective operator from exhibiting dancing, or a prospective dancer from performing. None of

5. Kev argues that requiring the dancer to provide a list of "aliases (past and present)" unjustifiably invades the dancer's privacy. In *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir.1980), the Seventh Circuit invalidated a similar requirement for operators of adult book stores, noting that the "alias disclosure requirement involves an invasion of privacy not justified by the zoning interest and is not otherwise justified." *Id.* at 1216.

In the instant case, the alias disclosure requirement for dancers is justified by the County's substantial interest in preventing prostitution in erotic dance studios. The requirement will enable the County to monitor more effectively dance studios employing known prostitutes.

6. Kev also asserts that the five-day delay in granting the license to operate an erotic dance studio burdens the operators first amendment rights. We conclude, however, that the County presented a sufficiently compelling justification for this delay.

the information required by the County unreasonably diminishes the inclination to seek a license.[5] Moreover, the County has no discretion in issuing the licenses. Sections 4 and 7 provide that both licenses would be issued automatically by the County within five days.

Further, both license requirements serve valid governmental purposes. By monitoring erotic dancers and erotic dance studios, the County can allocate law enforcement resources to ensure compliance with the ordinance. Thus, we conclude that the County may require operators of erotic dance studios and erotic dancers to obtain licenses.

However, although the County may require dancers to be licensed, the County has failed to demonstrate a need for section 7d's five-day delay period between the dancer's filing of an application and the County's granting of a license. The ordinance unreasonably prevents a dancer from exercising first amendment rights while an application is pending. Because the County has not justified the five-day delay permitted by the statute with respect to the dancer's license application, this provision is unconstitutional.[6] Thus, we hold section 7d of the ordinance unconstitutional.[7]

The County contends that topless dancing establishments are likely to require a significant reallocation of law enforcement resources. As the district court concluded, "[b]ecause such resources in Kitsap County are limited, five days to adjust is reasonable. There is no reason for a new studio operator not to apply for a license one week before he plans to open his facility." Thus, there seems to be an important justification for the five-day waiting period in licensing dance establishments.

7. In striking down section 7d, we note that the Kitsap ordinance contains a severability clause. Under Washington law, a statute is not to be declared unconstitutional in its entirety unless the remainder of the act is incapable of achieving the legislative purposes. *Brockett v. Spokane Arcades, Inc.*, —— U.S. ——, 105 S.Ct. 2794, 2803, 86 L.Ed.2d 394 (1985). Because the effectiveness of this ordinance does not depend on the five-day period between the filing of an application for a license and its mandatory granting by the County, we need not strike down the ordinance in its entirety.

### b. *Business Records Requirement*

■ Sections 9b and 9c of the ordinance require operators of erotic dance studios to maintain business records and complete lists of all dancers, for inspection by the County.[8]

Although the business records requirements may impose a limited burden on operators of erotic dance studios, the burden is significantly outweighed by the advancement of the County's interest in preventing the infiltration of organized crime into erotic dance studios. The business records requirements are no more burdensome than the requirements placed on a myriad of other businesses and substantially further the County's interest. Thus, these regulations do not violate the first amendment.

### c. *Regulations Affecting Dancing*

■ The ordinance also regulates the manner in which dancing may be exhibited. The ordinance: (1) prohibits dancers and patrons from fondling and caressing each other; (2) requires that all dancing take place at least ten feet from the patrons and on a stage raised at least two feet from the floor; and (3) prohibits patrons from tipping dancers.[9]

The alleged purpose of these requirements is to prevent patrons and dancers from negotiating for narcotics transfers and sexual favors on the premises of an erotic dance studio. Separating dancers from patrons would reduce the opportunity for prostitution and narcotics transactions.[10] Similarly, prohibiting dancers and patrons from engaging in sexual fondling and caressing in an erotic dance studio would probably deter prostitution.[11] Preventing the exchange of money between dancers and patrons would also appear to reduce the likelihood of drug and sex transactions occurring on regulated premises.

Further, these regulations do not significantly burden first amendment rights. While the dancer's erotic message may be slightly less effective from ten feet, the ability to engage in the protected expression is not significantly impaired.[12] Erotic dancers still have reasonable access to their market. *See Ellwest Stereo Theatres,* 681 F.2d at 1246 (open booths regula-

---

**8.** Section 9b requires that:
> No later than March 1 of each year an erotic dance studio licensee shall file a verified report with the Auditor showing the licensee's gross receipts and amounts paid to dancers for the preceding calendar year.

Section 9c provides:
> An erotic dance studio licensee shall maintain and retain for a period of two (2) years the names, addresses, and ages of all persons employed as dancers by the licensee.

**9.** Section 9i provides:
> All dancing shall occur on a platform intended for that purpose which is raised at least two feet (2') from the level of the floor.

Section 9j provides:
> No dancing shall occur closer than ten feet (10') to any patron.

Section 9k provides:
> No dancer shall fondle or caress any patron and no patron shall fondle or caress any dancer.

Sections 9l and 9m provide:
> No patron shall directly pay or give any gratuity to any dancer [and n]o dancer shall solicit any pay or gratuity from any patron."

**10.** The County presented testimony that close contact between dancers and patrons facilitated these transactions.

**11.** As we construe section 9k to prohibit only sexual fondling and caressing occurring in an erotic dance studio, we reject Kev's argument that the ordinance is overbroad. Our holding today does not address the dancers' and the patrons' right of privacy to associate freely with each other under other circumstances. We hold simply that because of the County's legitimate and substantial interest in preventing the demonstrated likelihood of prostitution occurring in erotic dance studios, the County may prevent dancers and patrons from sexually touching each other while the dancers are acting in the scope of their employment.

**12.** In *International Society for Krishna Consciousness,* 452 U.S. at 650–51, 101 S.Ct. at 2565–66, the Supreme Court noted that "consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in the light of the characteristic nature and function of the particular forum involved." Given the characteristics of erotic dance studios, the ordinance does not impair the dancer's ability to display her art.

.tion did not affect access to adult films). Similarly, while the tipping prohibition may deny the patron one means of expressing pleasure with the dancer's performance, sufficient alternative methods of communication exist for the patron to convey the same message. Thus, the regulations are reasonable time, place, and manner restrictions that only slightly burden speech.

### IV. *Conclusion*

Except for the five-day delay between the dancer's filing of an application for a license and the mandatory granting of the license by the County, Kitsap County's regulations of erotic dance studios are reasonable time, place, and manner restrictions, justified without reference to the content of the protected expression. Thus, we REVERSE as to the provision permitting the five day delay in granting the dancer's license and AFFIRM the other provisions. Each side to bear its own costs.

J. Blaine Anderson, Circuit Judge, filed dissenting opinion.