**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1577**

AMERICAN ENTERTAINERS, L.L.C., a North Carolina limited liability company, d/b/a Gentleman's Playground,

Plaintiff – Appellant,

v.

CITY OF ROCKY MOUNT, NORTH CAROLINA,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, Chief District Judge.  (5:14-cv-00438-D)

Argued:  January 24, 2018                    Decided:  April 27, 2018

Before AGEE, WYNN, and THACKER, Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion.  Judge Wynn wrote the opinion, in which Judge Agee joined.  Judge Thacker wrote a concurring opinion.

Gary Scott Edinger, BENJAMIN, AARONSON, EDINGER & PATANZO, PA, Gainesville, Florida, for Appellant.  James Nicholas Ellis, POYNER SPRUILL LLP, Rocky Mount, North Carolina, for Appellee.

WYNN, Circuit Judge:

The City of Rocky Mount, North Carolina ("Rocky Mount"), regulates "sexually oriented businesses" by requiring those businesses to obtain a license prior to operation. Appellant American Entertainers, LLC ("American Entertainers"), an exotic dancing venue, argues that the licensing regulation, in its entirety, violates the First Amendment on overbreadth grounds because it potentially requires licensure of venues that display "mainstream" performances such as ballets, concerts, and theatrical productions. In the alternative, American Entertainers contends that one of the licensing regulation's denial provisions is an unconstitutional prior restraint because it vests "unbridled discretion" in a governmental official to deny license applications and that another of the denial provisions violates the Equal Protection Clause of the Fourteenth Amendment by barring eighteen- to twenty-one-year-olds from owning "sexually oriented businesses." The district court rejected all three claims.

For the reasons that follow, we affirm the district court's denial of American Entertainers' First Amendment overbreadth challenge and Equal Protection challenge. We conclude, however, that the district court erred in rejecting American Entertainers' prior restraint claim. By authorizing the police chief to deny a license if the chief believes the applicant will fail to comply with "all applicable laws," the challenged denial provision is insufficiently "narrow, objective, and definite" to pass constitutional muster. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). We therefore strike as unconstitutional the relevant denial provision from the Ordinance and remand to the

2

district court to consider whether and to what extent the provision is severable from the remainder of the Ordinance.

In sum, we affirm in part, vacate in part, and remand the case to the district court for further proceedings consistent with this opinion.

I.

A.

Since 2002, American Entertainers has operated within Rocky Mount's limits a business known as "Gentleman's Playground." Gentleman's Playground features exotic dancers, whose scant attire has varied throughout its sixteen years of operation. Rocky Mount and American Entertainers previously have had disputes regarding the revealing nature of Gentleman's Playground's dancers' attire, including a voluntarily dismissed lawsuit back in 2003. Although years subsequently passed without incident, a 2014 police investigation regarding Gentleman's Playground caused Rocky Mount to seek to enforce against American Entertainers its sexually oriented business ordinance. Rocky Mount, N.C., Code of Ordinances § 13-270 *et seq.* [hereinafter Ordinance].

The Ordinance constitutes Chapter 13, Article VII of Rocky Mount's City Code, and addresses "the regulatory licensing requirements for sexually oriented businesses located within the city." § 13-270(a). Rocky Mount enacted the Ordinance because "[s]exually oriented businesses . . . are recognized as having serious objectionable operational characteristics" and "[s]tudies and experiences in other municipalities have shown that lower property values and increased crime rates tend to accompany and are

brought about by sexually oriented businesses." *Id.* Accordingly, "[t]he city council f[ou]nd[] that regulation . . . [wa]s necessary to insure that these adverse secondary effects do not contribute to the blighting of surrounding neighborhoods and to regulate acts, omissions or conditions detrimental to the health, safety or welfare and the peace and dignity of the city." *Id.* The Ordinance's stated goal is to "balanc[e] . . . the legitimate ends of the community," and requires any sexually oriented business "to carry its share of financing the administrative and enforcement activities." § 13-270(b).

The Ordinance defines a sexually oriented business as, in pertinent part, "any . . . *adult cabaret* . . . as defined in this article." § 13-271 (emphasis added). An "adult cabaret," in turn, is defined as "any retail business or private club as defined in North Carolina General Statutes § 18B-1000 which: (a) serves food or beverages, or permits the consumption of food or beverages; and (b) regularly provides or has available for viewing by its patrons or members *adult live entertainment*." *Id.* (emphasis added). The term "adult live entertainment" means "any performance of or involving the actual presence of real people which exhibits *specified sexual activities* or specified anatomical areas, as defined in this article." *Id.* (emphasis added). The Ordinance defines "specified sexual activities" as, in relevant part, the "[f]ondling or other erotic touching of human genitals, pubic regions, buttocks or female breasts." *Id.*

Additionally, the Ordinance contains six license-denial provisions. § 13-273(d). The two provisions at issue in this appeal permit Rocky Mount's police chief to deny a license if either (1) "the operation [of the sexually oriented business], as proposed by the applicant, if permitted, would not comply with all applicable laws, including, but not

4

limited to, the city's building, zoning, and health regulations;" or (2) any license applicants or other specified business principals are "not over the age of twenty-one . . . years." § 13-273(d)(2), (d)(6).

## B.

Rocky Mount sought to enforce the Ordinance against American Entertainers after police investigators learned that dancers at Gentleman's Playground were providing "adult live entertainment" within the meaning of the Ordinance. In response, American Entertainers filed a Complaint in the Eastern District of North Carolina challenging, among other things, the application and constitutionality of the Ordinance under the First Amendment and the Equal Protection Clause.

After the close of discovery, the parties filed cross-motions for summary judgment. The district court granted in part and denied in part the motions, resolving in Rocky Mount's favor American Entertainers' constitutional claims. American Entertainers timely filed a motion for rehearing, which the district court denied. American Entertainers timely appealed three constitutional determinations to this Court.

## II.

American Entertainers asserts three arguments on appeal, that the Ordinance: (A) is unconstitutionally overbroad; (B) imposes an unconstitutional prior restraint by granting Rocky Mount's police chief unfettered discretion to deny a permit; and (C) violates the First Amendment and Equal Protection Clause by prohibiting from being owners, officers, or directors of a sexually oriented business individuals between eighteen

5

and twenty-one years of age. Because this appeal arises from a district court's grant of summary judgment, we review each issue de novo. *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

## A.

American Entertainers first argues that the Ordinance is unconstitutionally overbroad under the First Amendment because the Ordinance defines "sexually oriented business"—and "adult cabaret," in particular—in terms "not limited to nude entertainment . . . no[r] limited to alcoholic beverage establishments." Appellant's Br. 8. Therefore, the specific conduct encompassed by the definition of "specified sexual activities" "reach[es] conventional, mainstream arts and entertainment." *Id.*

### 1.

Before considering these arguments, we first must address Rocky Mount's two threshold objections to American Entertainers' overbreadth claim: that American Entertainers lacks standing to assert a facial overbreadth challenge and that American Entertainers' overbreadth arguments are not properly before this Court.

Rocky Mount urges that American Entertainers lacks standing to assert a facial overbreadth challenge because Gentleman's Playground undisputedly falls within the relevant Ordinance definitions. However, this conflates the law of vagueness challenges, *see, e.g.*, *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 59–61 (1976) (declining to adjudicate vagueness challenge of "hypothetical . . . persons not before the Court"), with the law regarding overbreadth challenges, *see, e.g.*, *Giovani Carandola, Ltd. v. Bason* ("*Carandola I*"), 303 F.3d 507, 512 (4th Cir. 2002) ("Pursuant to [the overbreadth

6

doctrine], an individual may 'challenge a statute on its face because it also threatens others not before the court.'" (quoting *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987))). The overbreadth doctrine permits those whose "conduct . . . is clearly unprotected and could be proscribed by a law drawn with the requisite specificity" to nevertheless challenge the constitutionality of a law's applicable scope. *E.g.*, *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503–04 (1985). Such challenges are justified by the concern that "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." *Ferber*, 458 U.S. at 768 (quoting *Gooding v. Wilson*, 405 U.S. 518, 521 (1972)). Accordingly, that Gentleman's Playground likely falls within the Ordinance's constitutional scope does not bar American Entertainers' overbreadth challenge.

Next, Rocky Mount argues that American Entertainers forfeited its right to challenge several provisions of the Ordinance as overly broad because American Entertainers' Complaint only expressly challenged as overbroad the definition of "specified sexual activities." American Entertainers' Complaint, however, alleged that "*all* of [Rocky Mount]'s regulations governing sexually oriented businesses are unconstitutional on their face," J.A. 11 (emphasis added), described the interlocking nature of the Ordinance definitions at issue in this appeal, and targeted the most-specifically defined term: "specified sexual activities." J.A. 42–43. Although this places primary focus on the definition of "specified sexual activities," it does so of necessity. The definition of "specified sexual activities" provides required meaning to each

7

Ordinance section here at issue and listed in the Complaint. Further, the definition does not exist in a vacuum—it necessarily must be read within the surrounding context of the Ordinance. *See Parker v. Levy*, 417 U.S. 733, 760 (1974) ("[F]acial invalidation is inappropriate if the '*remainder of the statute . . .* covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'" (alterations in original) (emphasis added) (quoting *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 580–81 (1973))). And, at bottom, American Entertainers' overarching claim is that this most-specific term sweeps in too much protected expression given its surrounding context. *See, e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 611, 613 (1973) (explaining that an overbreadth finding necessarily entails the determination that a statute as a whole is not "narrowly drawn" and therefore renders "any enforcement of a statute thus placed at issue . . . totally forbidden").

In sum, our analysis must consider the regulatory context surrounding the definition of "sexually oriented business," *see id.* at 615 ("[T]he overbreadth of a statute must . . . be . . . judged in relation to the statute's plainly legitimate sweep."), and American Entertainers' Complaint put Rocky Mount on notice of both American Entertainers' overbreadth claim and the relevant contextual statutory sections.

### 2.

Having rejected Rocky Mount's threshold arguments, we now address the merits of American Entertainers' overbreadth claim. In addressing that claim, we must keep in mind that "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications." *Ferber*, 458 U.S. at 771. This is because "[i]f an

overbreadth challenge succeeds, 'any enforcement' of the regulation at issue is 'totally forbidden.'" *Carandola I*, 303 F.3d 507, 512 (4th Cir. 2002) (quoting *Broadrick*, 413 U.S. at 613). Accordingly, an overbreadth challenge may only succeed if the challenged "regulation's overbreadth is 'not only . . . real, but substantial as well, judged in relation to the [challenged regulation's] plainly legitimate sweep,' and also that no 'limiting construction' or 'partial invalidation' could 'remove the seeming threat or deterrence to constitutionally protected expression.'" *Id.* (alterations in original) (quoting *Broadrick*, 413 U.S. at 613, 615). Declaring a statute unconstitutionally overbroad "is, manifestly, strong medicine," and should be "employed . . . sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613.

"The level of First Amendment scrutiny a court applies to determine the 'plainly legitimate sweep' of a regulation depends on the purpose for which the regulation was adopted." *Carandola I*, 303 F.3d at 512. "If . . . the regulation was adopted for a purpose unrelated to the suppression of expression—e.g., to regulate conduct, or the time, place, and manner in which expression may take place—a court must apply . . . intermediate scrutiny." *Id.* at 512–13.

American Entertainers does not dispute that Rocky Mount adopted the Ordinance to regulate the deleterious secondary effects of adult entertainment and therefore enacted the regulation for a purpose unrelated to the suppression of expression. Accordingly, intermediate scrutiny applies. *See, e.g.*, *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) ("The ordinance by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the

9

quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views." (alterations in original)).

Under intermediate scrutiny, we will uphold a regulation that has the potential to burden speech if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Satellite Broad. & Commc'ns Ass'n v. F.C.C.*, 275 F.3d 337, 355 (4th Cir. 2001) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)); *see also Carandola I*, 303 F.3d at 515 (applying intermediate scrutiny in challenge to statute restricting exotic dancing in businesses licensed to serve alcohol). In applying intermediate scrutiny, this Court engages in a two-part analysis. "First, we must determine whether the regulation materially advances an important or substantial interest by redressing past harms or preventing future ones." *Satellite Broad.*, 275 F.3d at 356. Second, "[i]f the regulation materially advances some important or substantial interest, we then . . . ask whether the regulation is narrowly tailored to serve that interest." *Id.*

The district court concluded—and we agree—that Rocky Mount "has a substantial interest in regulating exotic dancing because such entertainment has 'a long history of spawning deleterious effects.'" *Am. Entertainers, L.L.C. v. City of Rocky Mount*, No. 5:14-cv-438-D, 2016 WL 4728077, at *11 (E.D.N.C. Sept. 8, 2016) (quoting *Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634, 637 (4th Cir. 1999)). The Ordinance expressly references such deleterious effects, citing evidence from "other municipalities [that] ha[s] shown that lower property values and increased crime rates tend to accompany and are

10

brought about by sexually oriented businesses." § 13-270(a). Significantly, the Supreme Court has accepted such evidence as justifying regulation of both adult motion picture theaters, *Renton*, 475 U.S. at 51–52, and concentrations of "adult establishments" more generally, *City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 430 (2002) (plurality op.); *see id.* at 449–52 (Kennedy, J., concurring).

We further conclude that the licensing provisions materially advance that substantial interest. In particular, the Ordinance subjects sexually oriented businesses to a licensing fee to make such businesses "carry [their] share of financing the administrative and enforcement activities" associated with minimizing and ameliorating the deleterious secondary effects flowing from sexually oriented businesses. § 13-270(b). Courts have recognized that "an ordinance requiring a person to pay a license or permit fee before he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state activity." *E.g.*, *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 395 (6th Cir. 2001) (quoting *Ne. Ohio Coal. for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1108 (6th Cir. 1997)); *see also Kev, Inc. v. Kitsap Cty.*, 793 F.2d 1053, 1060 (9th Cir. 1986) (concluding that municipal ordinance requiring licensure of "erotic dancers and erotic dance studios" served valid governmental purpose because it allowed municipality to "allocate law enforcement resources to ensure compliance with the ordinance"). The $100 fee per sexually oriented business that the Ordinance imposes, § 13-278, helps to subsidize the increased safety-enforcement costs that experience demonstrates sexually oriented

11

businesses require. *See Kev, Inc.*, 793 F.2d at 1059 ("[T]he County presented evidence that drug dealing, prostitution, and other social ills accompany topless dancing establishments."); J.A. 291 (police report detailing alleged "assault [of a] female adult entertainer" and corresponding "shooting with injury" due to argument regarding a "private dance" for a customer at Gentleman's Playground), 331–33 (police chief explaining that nightclubs generally attract more crime, including "over-intoxication of patrons" and "disturbance[-]type calls").

Additionally, in view of these recognized deleterious secondary effects, the Ordinance precludes the licensing of a sexually oriented business when individuals who are intimately tied to that business "have been convicted" of various criminal offenses. § 13-273(d)(3). Such offenses include crimes of "force and violence [used] upon . . . another," of "sexual misconduct," or "involving narcotics, dangerous drugs or dangerous weapons that amount[] to a felony." *Id.* Each of these offense categories implicates the deleterious secondary effects the Ordinance seeks to deter through regulation. *See, e.g.*, *Renton*, 475 U.S. at 48 (1986) ("The ordinance by its terms is designed to prevent crime . . . and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life.'" (second, third, and fourth alteration in original)); Ordinance § 13-270(a) ("[R]egulation . . . is necessary to . . . [preserve] the health, safety [and] welfare and the peace and dignity of the city."). In sum, the licensing requirement materially advances a substantial governmental interest.

We next must determine whether the Ordinance's licensing provision is sufficiently narrowly tailored to satisfy intermediate scrutiny. The narrow-tailoring

12

requirement "is met 'so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Satellite Broad.*, 275 F.3d at 356 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Put differently, a regulation satisfies the narrow-tailoring requirement if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (quoting *Ward*, 491 U.S. at 799). Importantly, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 799.

In assessing whether the licensing requirement "burden[s] substantially more speech than is necessary," *Satellite Broad.*, 275 F.3d at 356 (internal quotation mark omitted), we note at the outset that American Entertainers' overbreadth challenge to Rocky Mount's sexually oriented business licensing requirement differs from run-of-the-mill overbreadth challenges involving a sexually oriented business regulation. Typically, such cases challenge a statute or ordinance—or an enforcement action under such a statute or ordinance—that, (1) under the statute's definitions, potentially sweeps in "mainstream" performances, like ballets or plays, and (2) flatly bans or otherwise restricts such speech. For example, many such cases involve regulations that bar a sexually oriented business from operating in certain areas. *See, e.g.*, *Renton*, 475 U.S. at 43 (addressing zoning provision that "prohibit[ed] adult motion picture theaters from locating within 1,000 feet of [various] zone[s]"); *Alameda Books*, 535 U.S. at 429

13

(addressing challenge to zoning provisions that "prohibit[ed] the establishment or maintenance of more than one adult entertainment business in the same building" (internal quotation marks omitted)). Other cases involve statutes or ordinances that ban nudity or sexual conduct or displays at certain kinds of businesses. *Carandola I*, 303 F.3d at 510–11 (addressing challenge to "state restrictions on nudity and other conduct," violations of which resulted in a penalty of "either a 30[-]day suspension of [alcoholic beverage] permits or a 15-day suspension and a $3,000 fine"); *Legend Night Club v. Miller*, 637 F.3d 291, 294–95 (4th Cir. 2011) (addressing alcoholic beverage legislation that "limit[ed] the range of permissible conduct, attire, and entertainment at establishments licensed to serve alcoholic beverages" that, "if enforced, would prohibit [businesses] from providing both alcoholic beverages and adult entertainment"). By prohibiting imprecise categories of speech, the regulations in such cases involve a potentially substantial burden on non-sexual speech and therefore "burden substantially more speech than is necessary to further the government's legitimate interests" in regulating the secondary effects of sexually oriented business. *Satellite Broad.*, 275 F.3d at 356 (quoting *Ward*, 491 U.S. at 799).

By contrast, American Entertainers' overbreadth challenge focuses on a *licensing* requirement, not a ban on speech.[1] To be sure, a licensing requirement could have the

---

[1] Below, American Entertainers challenged several other aspects of the Ordinance—a prohibition on touching between "adult entertainers" and patrons and a prohibition on providing "adult live entertainment" to only one customer—as well as an aspect of Rocky Mount's zoning ordinance that required 500 feet of space between (Continued)

14

effect of impermissibly chilling protected First Amendment activity. For example, if a state or municipality's licensing regime swept in mainstream performances and imposed a substantial fee on licensees, required a substantial waiting period before an applicant could obtain a license, or lacked a meaningful mechanism for an applicant to challenge an adverse licensing decision, the licensing requirement could unduly burden protected speech. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226–28 (1990) (opinion of O'Connor, J.) (explaining that licensing schemes constitutionally must provide "[]adequate procedural safeguards"); *Freedman v. Maryland*, 380 U.S. 51, 57 (1965) (explaining same, and specifically discussing judicial review).

But American Entertainers' overbreadth challenge does not focus on any particular burden attributable to Rocky Mount's licensing requirement for sexually oriented businesses. American Entertainers does not assert, for example, that the licensing requirement imposes an unconstitutional burden on the speech rights of "sexually oriented businesses" because the fee is too high, because obtaining the license is too administratively onerous, because it takes too long to obtain a license, or because there is no adequate judicial mechanism for timely reviewing a denial of an application for a license.

Rather, American Entertainers' overbreadth challenge appears to rest solely on the claim that subjecting some businesses to a licensing requirement—but not others—

---

discrete adult establishments. In this Court, American Entertainers challenges only the licensing requirement.

15

violates the First Amendment, at least when some of the businesses subject to the licensing requirement might provide a venue for performances that are not "specifically sexual in nature" or involve "traditional theater and other artistic presentations which may incorporate an erotic component." Appellant's Br. 17; *see Oral Argument: Am. Entertainers, L.L.C. v. City of Rocky Mount, NC*, 10:09–25 (Jan. 24, 2018) ("Q: So then are we only concerned just about the burden that's imposed by requiring this operational license? A: Yes, with a little explanation: My client is most concerned about the licensing features and the regulations on conduct."), http://coop.ca4.uscourts.gov/OAarchive/mp3/17-1577-20180124.mp3. To that end, American Entertainers asks this Court to closely parse the text of the Ordinance to determine whether venues that put on ballets, concerts, or theatrical productions—performances that might involve "fondling or other erotic touching"—would be subjected to the licensing requirement. Appellant's Br. 12–17. We decline that invitation.

American Entertainers' myopic focus on the Ordinance's definition of "sexually oriented business" misses the dispositive question: does the Ordinance's licensure requirement impose any substantial burden on First Amendment interests, such that the licensure is not narrowly tailored to serve the government's substantial interest in regulating the deleterious secondary effects of sexually oriented businesses? Answering that question, we conclude that regardless of whether the language of the Ordinance in fact sweeps in venues that display mainstream performances, the licensing requirement does not significantly burden the speech of *either* exotic-dancing establishments—like American Entertainers'—*or* venues that display mainstream performances that may

16

involve "erotic touching"—like ballets, concerts, or theatrical productions—and therefore does not run afoul of the First Amendment.

"It is well established that the government may, under its police power, require licensing of various activities involving conduct protected by the [F]irst [A]mendment." *Kev, Inc.*, 793 F.2d at 1059 (collecting cases); *see also Niemotko v. Maryland*, 340 U.S. 268, 280 (1951) (Frankfurter, J., concurring) ("[I]t [is] clear that the United States Constitution does not deny localities the power to devise a licensing system if the exercise of discretion by the licensing officials is appropriately confined."); *New York ex rel. Lieberman v. Van De Carr*, 199 U.S. 552, 560 (1905) ("That this court will not interfere because the states have seen fit to give administrative discretion to local boards to grant or withhold licenses or permits to carry on trades or occupations, or perform acts which are properly the subject of regulation in the exercise of the reserved power of the states to protect the health and safety of its people, there can be no doubt."). In light of the states' and municipalities' longstanding authority to license activities within their borders, a licensing requirement must further impede First Amendment interests in order to raise expression-related constitutional concerns, such as when the "licensing requirement . . . inhibits the ability or the inclination to engage in . . . protected expression." *Kev, Inc.*, 793 F.2d at 1060.

Here, American Entertainers makes no allegation that the license "would be difficult to obtain or would for some other reason discourage . . . a prospective operator from exhibiting dancing." *Id.* at 1060. Because there is no evidence that the licensing requirement, by itself, imposes any significant burden on speech, we certainly cannot

17

conclude that the Ordinance "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Satellite Broad.*, 275 F.3d at 356 (quoting *Ward*, 491 U.S. at 799). Accordingly, it is within Rocky Mount's police powers to require licensure of "sexually oriented businesses," however it chooses to define that term. That Rocky Mount may have been able to define "sexually oriented businesses" in a manner that more clearly excludes mainstream performances like ballets, concerts, and theatrical productions does not impact this conclusion: the narrow-tailoring requirement does not demand the government choose the most closely tailored regulation, *see Ward*, 491 U.S. at 799, particularly when, as here, the challenged statute or ordinance does not meaningfully burden speech.

Given that (1) the licensing requirement materially advances a substantial governmental interest and (2) American Entertainers identifies no burden imposed by the licensing requirement, we conclude that the licensing requirement is narrowly tailored to serve Rocky Mount's legitimate interest and therefore reject American Entertainers' overbreadth challenge.[2]

---

[2] Viewed within the appropriate constitutional framework, American Entertainers' argument perhaps best sounds as a vagueness challenge—that the Ordinance's definition of "adult cabaret" fails to give businesses "fair notice" as to what conduct triggers the licensing requirement. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). But, as American Entertainers recognizes, it may not bring such a challenge as a third-party who clearly falls within the Ordinance's ambit. *See Young*, 427 U.S. at 60–61.

18

B.

American Entertainers next argues that one of the Ordinance's six license-denial provisions, subsection (2)—which allows Rocky Mount's police chief to deny a permit if he determines that the proposed business would not comply with "all applicable laws," § 13-273(d)(2)—is an unconstitutional prior restraint because it "fail[s] to constrain . . . review to building codes or other health and safety laws [and therefore] allows a permit to be denied for trivial or invented reasons at the discretion of the official."  Appellant's Br. 8.  Although mindful that Rocky Mount has a valid interest in ensuring compliance with all laws, we agree with American Entertainers that the denial provision vests impermissible discretion in the police chief to choose on a case-by-case basis which laws apply in reviewing a particular application and thus is too broad to survive constitutional scrutiny.

Licensing schemes preclude expression until certain requirements are met, and therefore are prior restraints.  *See FW/PBS, Inc.*, 493 U.S. at 223 (opinion of O'Connor, J., joined by Stevens & Kennedy, JJ.) ("We granted certiorari on the issue whether the [sexually oriented business] licensing scheme is an unconstitutional prior restraint that fails to provide adequate procedural safeguards as required."); *id.* at 240 (Brennan, J., concurring, joined by Marshall & Blackmun, JJ.) (impliedly conducting prior restraint analysis and therefore arguing that the government should "bear the burden of going to court and proving its case *before* it may permissibly deny licenses to First Amendment-protected businesses" (emphasis added)); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546,

19

553 (1975) (explaining that prior restraints "g[i]ve public officials the power to deny use of a forum in advance of actual expression").

There are "two evils that will not be tolerated in [licensing] schemes[:]" either (1) placing "'unbridled discretion in the hands of a government official or agency," thus potentially "result[ing] in censorship,'" or (2) "fail[ing] to place limits on the time within which the decisionmaker must issue the license." *FW/PBS, Inc.*, 493 U.S. at 225–26 (opinion of O'Connor, J.) (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988)). The present case implicates only the former concern. A licensing scheme confers too much discretion on a governmental decisionmaker when it allows the decisionmaker to deny an application based solely on the decisionmaker's "own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'" *Shuttlesworth*, 394 U.S. at 150 (quoting relevant ordinance). By contrast, a licensing scheme is valid when "concrete standards . . . guide the decision-maker's discretion," such as limits placed "by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood*, 486 U.S. at 770–71. To survive constitutional scrutiny, a licensing regulation must therefore provide "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth*, 394 U.S. at 151.

In the present case, Rocky Mount argues that the police chief's licensing determinations are objective ones, drawn exclusively from an applicant's business proposal and the letter of the law. However, this overlooks the plain language of the license-denial provision at issue, which by its terms extends the police chief's inquiry to

20

the entire body of municipal, state, federal, and common law.[3]  The denial-provision

exemplars—Rocky Mount's "building, zoning, and health regulations"—provide

meaningful reference points.  Ordinance § 13-273(d)(2).  The police chief can easily and

objectively determine whether an applicant's "[s]ervice equipment [will be] . . . located in

any attic, clothes closet, kitchen storage cabinet, bathroom, toilet room, bedroom, coal or

trash bin."  § 5-109(b)(1).  Or whether an applicant's proposed business location

complies with Rocky Mount's zoning restrictions.  *See generally* Ordinance app. A

("Land Development Code").  But many other laws that may apply to sexually oriented

businesses do not have such straightforward analyses.  For example, each applicant must

include in her application "[t]he name of the sexually oriented business."  § 13-273(a)(2).

If that name creates a likelihood of confusion with another entity's valid and protectable

trademark, then the applicant violates the Lanham Act's provisions regarding trademark

infringement.  *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir.

2009); *see* 15 U.S.C. § 1114(1).  However, such an infringement determination can only

be made after performing sophisticated analysis of a nine-factor test, the prongs of which

almost all turn on evidence not contained within a licensing application.  *Imagination*

*Entm't*, 575 F.3d at 393 (articulating factors such as "the similarity of advertising used by

the markholders" and "the strength or distinctiveness of the plaintiff's mark as actually

---

[3] At oral argument, Rocky Mount confirmed that the Ordinance means "all laws" in the broadest sense possible.  Rocky Mount explained that "[a]s soon as we start enumerating laws, what's going to happen?  We're going to leave out one."  *Oral Argument: Am. Entertainers, L.L.C. v. City of Rocky Mount, NC*, 29:13–18 (Jan. 24, 2018), http://coop.ca4.uscourts.gov/OAarchive/mp3/17-1577-20180124.mp3.

used in the marketplace," and conducting eleven paragraphs of analysis regarding the latter).

Further, it is unrealistic to expect the police chief to consider the entire body of multiple jurisdictions' law within the Ordinance's fifteen-day time limit. Ordinance § 13-273(e). This subverts the core of *Shuttleworth*'s command that licensing standards be "narrow, objective, and definite," 394 U.S. at 151, in order to guard against "decision[s] to issue or refuse" licenses turning on "appraisal of facts, the exercise of judgment, and the formation of an opinion." *Se. Promotions, Ltd.*, 420 U.S. at 554. Of necessity, the police chief *must* narrow the scope of his legal inquiry in order to comply with the fifteen-day deadline. But there is no statutory guarantee that the police chief will uniformly narrow the scope of his legal inquiry across all applications. "Accompanying such discretion is the opportunity to discriminate against a licensee on the basis of what the licensee intends to say, which . . . raises the spectre of prior restraint." *Miami Herald Publ'g Co. v. City of Hallandale*, 734 F.2d 666, 675 (11th Cir. 1984); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999) ("[T]he cases show that virtually any amount of discretion beyond the merely ministerial is suspect.").

In sum, the relevant license-denial provision sweeps too broadly by requiring the police chief to choose on a case-by-case basis which particular laws to consider in evaluating applications. And even if the police chief somehow each time considered every law across all relevant jurisdictions, the sophisticated analysis inherent in various laws' application would require the police chief to exercise a constitutionally impermissible amount of discretion in evaluating applications. The provision therefore

violates each of *Shuttleworth*'s commands by rendering the police chief's evaluation neither "narrow, [nor] objective, [nor] definite," 394 U.S. at 151, and cannot overcome the "heavy presumption against its constitutional validity." *FW/PBS, Inc.*, 493 U.S. at 225 (opinion of O'Connor, J.).

Given our conclusion that the license-denial provision is an unconstitutional prior restraint, American further urges that the Ordinance as a whole must fall because the provision is not severable from the remainder of the Ordinance. However, the district court did not have an opportunity to address this issue in the first instance, and we therefore decline to do so now. *See Chesapeake B & M, Inc. v. Harford Cty., Md.*, 58 F.3d 1005, 1012 (4th Cir. 1995) ("Because the Licensing Law contains a severability clause, we remand to the district court to determine whether and to what extent the licensing scheme is severable from the remainder of the Licensing Law."); *Whittle v. Timesavers, Inc.*, 749 F.2d 1103, 1106 (4th Cir. 1984) ("[B]ecause the district court's opinion did not . . . discuss this issue, we . . . remand the case for further proceedings.").

Accordingly, we strike as unconstitutional section 13-273(d)(2) of the Ordinance and remand to the district court to determine whether and to what extent section 13-273(d)(2) is severable from the remainder of the Ordinance.

## C.

American Entertainers' final argument is that subsection (6) of the Ordinance's permit-denial provisions—which applies when any business applicants or other specified business principals are under twenty-one years old—"infringes upon equal protection and

the First Amendment rights of adult citizens to free expression." Appellant's Br. 44; Ordinance § 13-273(d)(6). We disagree.

As American Entertainers recognizes, "age is not a suspect classification under the Equal Protection Clause." *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991). Accordingly, rational-basis review applies unless the First Amendment dictates a higher standard. *Id.* American Entertainers admits "there is a dearth of published cases considering the exact question of whether adults over the age of eighteen but younger than twenty-one have a First Amendment right to apply for a [Sexually Oriented Business] license." Appellant's Br. 55. Nonetheless, American Entertainers urges that "there appears to be no principled reason why the First Amendment would not extend" to the purported right of those under twenty-one years old "to own, manage and operate an adult business." *Id.* at 59.

In attempting to ratchet up the level of constitutional review, American Entertainers analogizes to cases involving either the direct "disseminator" of a specific First-Amendment-protected communication, such as a movie theater or promoter seeking to present a theatrical production at a municipal facility, *e.g.*, *Se. Promotions, Ltd.*, 420 U.S. at 554 ("The board was empowered to determine whether the [promoter] should be granted permission—in effect, a license or permit—on the basis of its review of the content of the proposed production."), or a "patron" of or "performer" at an adult business, *e.g.*, *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1283 (10th Cir. 2002) (striking down law prohibiting "anyone under the age of twenty-one from being on the premises of a business offering live nude dancing," including both patrons and dancers). However, seeking to display, perform, or patronize a particular art performance or piece

24

is not equivalent to owning a business that offers for consumption some expressive activity. The constitutional principles implicated by general business licensing schemes are instead those involving pure economic regulation and states' inherent police powers, areas in which government enjoys great regulatory latitude. *See, e.g.*, *Lochner v. New York*, 198 U.S. 45, 75 (1905) (Holmes, J., dissenting) ("It is settled by various decisions of this court that state constitutions and state laws may regulate life in many ways which we as legislators might think as injudicious, or if you like as tyrannical, as this, and which, equally with this, interfere with the liberty to contract."), *abrogated by W. Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937); *Nebbia v. New York*, 291 U.S. 502, 527–28 (1934) ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases."); *Powers v. Harris*, 379 F.3d 1208, 1211, 1215 (10th Cir. 2004) (explaining that state regulation "limit[ing] the sale of caskets to licensed funeral directors" warranted rational-basis review "[a]s a state economic regulation that does not affect a fundamental right and categorizes people on the basis of a non-suspect classification").

Accordingly, we decline to recognize a First Amendment right for eighteen- to twenty-one year olds to own an adult business. Instead, the Ordinance's age-restriction provision warrants rational-basis review. Applying that standard, we conclude that the Ordinance's age restriction is rationally related to Rocky Mount's interest in ensuring that sexually-oriented-business owners are of legal drinking age, given alcohol's availability at most such venues. *Cf. Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 488 (1955) ("The day is gone when this Court uses the Due Process Clause of the Fourteenth

Amendment to strike down state laws, regulatory of business . . . conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."). We therefore reject American Entertainers' challenges to Ordinance section 13-273(d)(6).

## III.

In sum, we affirm the district court's award of judgment in favor of Rocky Mount regarding American Entertainers' overbreadth and age-restriction challenges. However, we vacate and remand for entry of judgment in favor of American Entertainers as to the district court's determination that section 13-273(d)(2) of the Ordinance does not constitute an unconstitutional prior restraint. On remand, the district court should further consider whether and to what extent section 13-273(d)(2) is severable from the remainder of the Ordinance. Accordingly, the judgment of the district court is

*AFFIRMED IN PART AND VACATED AND REMANDED IN PART*.

THACKER, Circuit Judge, concurring:

I concur in Judge Wynn's opinion in this case. However, I write separately to address my colleagues' perplexing suggestion that the Ordinance's use of the phrase "fondling or erotic touching" may render the Ordinance applicable to nonsexual touching in mainstream artistic performances. *See ante* at 16–18.

We have previously held that the word "fondling," as used in a North Carolina statute prohibiting "fondling of the breasts, buttocks, anus, vulva, or genitals," has a particular meaning in the context of a law regulating sexually oriented businesses: "manipulation of specified erogenous zones." *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1080–81, 1084 (4th Cir. 2006). That construction applies with equal force to the Ordinance here, since its purpose is also to regulate adult entertainment.

Further, in arguing that the word "touching" is overbroad, American Entertainers reads the word "erotic" out of the Ordinance entirely. The word "erotic" amplifies the meaning of the word "touching" in the Ordinance. Mere "touching" and "erotic touching" are not the same thing. "Erotic" means something. Specifically, it means "of, devoted to, or tending to arouse sexual love or desire." *Erotic*, Webster's Third New International Dictionary (2002). An action is "erotic" if it "tend[s] to incite sexual pleasure or desire" or is "directed toward sexual gratification." *Id.* "Erotic touching" might also be described as touching that is "lascivious," "lustful," "prurient," or "vulgar" -- the opposite of touching that is "decent," "polite," or "innocuous." *See Erotic*, Merriam-Webster, http://www.merriam-webster.com/thesaurus/erotic (last visited Apr. 4, 2018).

27

Quite simply, "erotic touching," like "fondling," has a sexual connotation that is plainly not present in mainstream artistic performances. Dancers performing a lift during a ballet surely do not intend for their touching to incite sexual arousal in the manner contemplated by the Ordinance. The same is true for athletic endeavors such as wrestling, where participants often come into contact with intimate body parts. Indeed, if "erotic touching" includes as broad a description as American Entertainers ascribes to it, the sports world is in trouble. Given such an extensive reading, a sports arena may well be considered a sexually oriented business, considering, for example, players' frequent celebratory slaps on the buttocks.